## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOUTH SHORE HEALTH CARE, INC, | ) | |
| SOUTH SHORE HEALTH CENTER, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| SOUTH SHORE HEALTH SYSTEM, INC. and | ) | |
| SOUTH SHORE HEALTH EXPRESS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs South Shore Health Care, Inc. and South Shore Health Center, Inc. (collectively, "Plaintiffs" or "SSHC"), through their undersigned attorneys, for their Complaint against Defendants South Shore Health System, Inc. and South Shore Health Express, Inc. herewith alleges as follows:

### NATURE AND STATUTORY BASIS OF ACTION

1. This is an action for service mark infringement and false designation of origin under 15 U.S.C. § 1125(a), for cybersquatting and cyberpiracy under 15 U.S.C. § 1125(d), for violation of the Massachusetts statute on Registration and Protection of Trademarks, Mass. Laws Ann. ch. 110H, § 13, and for unfair competition under Massachusetts common law.

### THE PARTIES

2. Plaintiffs are each Massachusetts corporations having principal places of business at 759 Granite Street, Braintree, Massachusetts 02184. SSHC is the exclusive owner of all right, title and interest in and to certain unregistered service marks long used within the Commonwealth of Massachusetts and in interstate commerce, together with certain service marks registered with the Commonwealth of Massachusetts, as set forth in Paragraphs 12, 14 and 16 hereinbelow.

3.      Since at least as early as April 1993, Plaintiffs and their predecessor practice have offered a wide variety of health-related services, managed the health of tens of thousands of individual patients, and provided health-related informational, analytical, diagnostic and consulting services to hundreds of companies—all under the longstanding service marks "SOUTH SHORE HEALTH CARE" and "SOUTH SHORE HEALTH CENTER" (collectively, the "SOUTH SHORE HEALTH Marks").  Over the last twenty-five years, Plaintiffs have established themselves as leading providers of health care and health-related services in the Boston metropolitan area, as well as elsewhere.

4.      On information and belief, Defendant South Shore Health System, Inc. ("SSHS") is a Massachusetts corporation having its principal place of business at 55 Fogg Road, South Weymouth, Massachusetts 02190.  On information and belief, Defendant South Shore Health Express, Inc. ("SSHE") is a Massachusetts corporation having its principal place of business at 55 Fogg Road, South Weymouth, Massachusetts 02190.  On information and belief, SSHS and SSHE (collectively, "the Hospital Health Network") offers similar, overlapping and/or related health care and health management services as SSHC.

## JURISDICTION AND VENUE

5.      Jurisdiction over this Complaint is expressly conferred on this Court pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338 and 1367.

6.      On information and belief, the Defendant Hospital Health Network is doing business in the Commonwealth of Massachusetts, because it is comprised of Massachusetts-based corporations, and because it has offices located in, and offers services to residents and other businesses within, the Commonwealth of Massachusetts.

7.      On information and belief, personal jurisdiction over the Defendant Hospital Health Network is vested with this Court pursuant to one or more subsections of Mass. Laws Ann. ch. 223, § 3.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)-(3).

**SSHC'S BUSINESS AND SERVICE MARKS**

9.      For more than twenty-five years, SSHC has used one or both of the SOUTH SHORE HEALTH Marks in association with providing a wide variety of health care and health management services, including preventive medicine, family health care, primary care, urgent care, rehabilitation services, and occupational health services, among others.  As of today, SSHC serves more than 10,000 individual patients over approximately 12,000 office visits per year—and SSHC has conservatively served over 125,000 individual patients over the last 15+ years alone.

10.     For over twenty-five years, Plaintiffs have answered the telephone with the words "South Shore Health Center" and/or "South Shore Health Care."  For over twenty-five years, all of Plaintiffs' signage, business cards, email marketing, brochures, appearances, letterhead, referral requests and invoices, among other documents, including for its occupational health services and urgent care clinic, prominently featured the names "SOUTH SHORE HEALTH CENTER" or "SOUTH SHORE HEALTH CARE."

11.     For nearly all of its more than twenty-five years of using the SOUTH SHORE HEALTH Marks, SSHC has been directed and managed by Doctor Robert S. Baratz.  Over that same time period, SSHC has been the ***sole and exclusive*** user of the exact designations "SOUTH SHORE HEALTH CARE" and/or "SOUTH SHORE HEALTH CENTER" in the Boston metropolitan area.  Plaintiff has also employed several medical doctors and nurse practitioners

over the years, and all of the services provided by all of its employees have been provided under one or both of the SOUTH SHORE HEALTH Marks.

12.     SSHC's predecessor Samson Medical Corporation first began to use the name "South Shore Health Center" at least as early as April 1993.  On or around April 21, 1993, SSHC filed a service mark application with the Commonwealth of Massachusetts to register the mark SOUTH SHORE HEALTH CENTER, which issued as Massachusetts Reg. No. 48038. A copy of the registration certificate for Massachusetts Reg. No. 48038 is attached as Exhibit A. Massachusetts Reg. No. 48038 identifies April 5, 1993 as the date of first use of the mark in Massachusetts, and the services listed in that registration are identified as: "physicians' office providing primary care (family health care), preventive medicine and occupational health services" in Class 41.  SSHC acquired Samson Medical's business, together with Massachusetts Reg. No. 48038 in 1994, together with the SOUTH SHORE HEALTH CENTER service mark and its associated goodwill.

13.     Over the years, SSHC's health services have steadily grown and have expanded to include a wide variety of services beyond the health care and maintenance of individual patients. For example, Plaintiff also provides instructional courses, conducts safety analyses, and provides guidance for drug testing programs, medical review officer services, and personnel testing, as well as occupational health services, among others.  Plaintiffs also offers their services to companies both within and outside Massachusetts, and thereby offers those services in interstate commerce. For instance, Plaintiffs offer drug collection services and drug testing services pursuant to Department of Transportation guidelines, amongst other medical and health services, for companies based in Rhode Island, New York andelsewhere.  Again, all of these services, both

within and outside of Massachusetts, have been offered under the SOUTH SHORE HEALTH Marks—and, more recently, consistently under the mark SOUTH SHORE HEALTH CARE.

14.     As noted above, SSHC is the exclusive owner of all right, title and interest in and to Massachusetts Trademark Reg. No. 48038, issued on the mark SOUTH SHORE HEALTH CENTER.  The coverage of that registration was extended by way of Massachusetts Trademark Reg. No. 86079 for the mark SOUTH SHORE HEALTH CENTER issued on July 2, 2018, for "medical services," which was duly and legally issued on or around July 3, 2018.

15.     Meanwhile, in or around July 2008, Plaintiffs transitioned from using just the mark SOUTH SHORE HEALTH CENTER to include the mark SOUTH SHORE HEALTH CARE. Plaintiffs have been using SOUTH SHORE HEALTH CARE in commerce now for over ten years, and the leading, dominant "SOUTH SHORE HEALTH" element of that mark is identical to the leading, dominant portion of "SOUTH SHORE HEALTH CENTER," which Plaintiffs have used since 1993.  Accordingly, Plaintiffs claim more than twenty-five years' use of the SOUTH SHORE HEALTH Marks.

16.     Plaintiffs have continued offering their services under at least one or both versions of the SOUTH SHORE HEALTH Marks and, on or around July 2 or 3, 2018, SSHC filed service mark applications with the Commonwealth of Massachusetts to register the SOUTH SHORE HEALTH Marks.  Specifically, follow-up Massachusetts Reg. No. 86079 for the mark SOUTH SHORE HEALTH CENTER issued on July 2, 2018, for "medical services" in Class 44; and Massachusetts Reg. No. 86083 for the mark SOUTH SHORE HEALTH CARE issued on July 3, 2018, for "medical services" in Class 44.  Copies of the registration certificates for Massachusetts Reg. Nos. 86079 and 86083 (collectively, the SOUTH SHORE HEALTH Registrations) are attached as Exhibit B.

17.     Plaintiffs are also the owner of a pending federal application for registration of the trademark SOUTH SHORE HEALTH CARE, under U.S. Trademark Appl. Ser. No. 88/302,113.

18.     The SOUTH SHORE HEALTH Registrations are valid, subsisting, and in full force and effect. The SOUTH SHORE HEALTH Registration certificates attached as Exhibit B are *prima facie* evidence of SSHC's exclusive right to use the registered marks within Massachusetts, as well as SSHC's ownership and exclusive right to use those marks in connection with the identified services. Mass. Laws Ann. ch. 110H, § 5.

19.     SSHC has invested considerable money, time, and effort into the development of the SOUTH SHORE HEALTH Marks. The SOUTH SHORE HEALTH Marks have become assets of immense value for SSHC, and for the patients and clientele and potential patients and clientele of SSHC's services, those marks serve as immediately recognizable and well-known indicators of source of the company's high-quality health care and health-related services.  By way of SSHC's extensive advertising, promotion and delivery of its services under the SOUTH SHORE HEALTH Marks, which has totaled hundreds of thousands of dollars over the years in expenditures, and by virtue of the continuous and exclusive use of those SOUTH SHORE HEALTH Marks for over twenty-five years, SSHC has developed significant brand recognition and goodwill in the SOUTH SHORE HEALTH Marks, with those marks having acquired distinctiveness in the minds of consumers, who associate the wording SOUTH SHORE HEALTH solely and exclusively with SSHC.

**DEFENDANTS' INFRINGEMENT OF SERVICE MARK RIGHTS & CYBERPIRACY**

20.     According to Commonwealth records, Defendant SSHE was organized in Massachusetts under the corporate name "Health Provider Services Organization of the South Shore, Inc.," in May 2011.  *See* Exhibit C.

21.     According to Commonwealth records, Defendant SSHS was organized under the laws of the Commonwealth of Massachusetts in 1922, under the corporate name Weymouth Hospital, before it started using the name South Shore Hospital in July 1945.  *See* Exhibit C; Exhibit D.  For nearly seventy-five years, SSHS has provided medical and health care services, and has conducted business and become known to the public, as "SOUTH SHORE **HOSPITAL**." Despite their longstanding use of that name, Defendants undertook a calculated effort to expand their footprint and revenues by encroaching on and co-opting Plaintiff's SOUTH SHORE **HEALTH** Marks, in 2018.

22.     Defendant Hospital Health Network registered the domain name <southshorehealth.org> in 2016 (*see* Exhibit E), and began operating that website to feature not only South Shore Hospital, but to also promote its other operations known under the trade names South Shore Medical Center, South Shore NeuroSpine, and other parts of its combined organization.  However, Defendant SSHE did not formally change its name from "Health Provider Services Organization of the South Shore," to "South Shore Health Express" until May 21, 2018. *See* Exhibit C.  At the time that the Defendant Hospital Health Network registered the domain name <southshorehealth.org> in 2016, Plaintiffs had already been using the SOUTH SHORE HEALTH Marks continuously and exclusively within the Boston metropolitan area for approximately twenty-three years.

23.     In 2018, it became clear that the Defendant Hospital Health Network was beginning to execute its plan to partner with and eventually acquire Health Express Urgent Care, a company that operates a number of urgent care and primary care clinics in the area near both Plaintiffs' and Defendants' medical businesses.  The articles in the attached Exhibit F demonstrate this trend in the health care industry in general, whereby hospitals acquire, purchase and/or otherwise partner

with smaller doctor's offices and local urgent care centers, towards expanding the brand and footprint of the hospital throughout a metropolitan area.  In one example article from the Boston Globe published an article on May 10, 2018 and titled "Hospital branch out in the suburbs with more urgent care centers," it is noted that "Hospitals and other health care providers are striving to bring medical care nearer to where people live, with less cost and wait."  *See* Exhibit F.  Both of those articles discuss the plans of South Shore Hospital specifically, and its intention to expand through "Health Express" locations—and the Boston Globe article now specifically referred to the Defendant Hospital Health Network as "South Shore Health," in reference to its providing a service within the town of Weymouth for responding to 911 medical emergencies.  *See* Exhibit F.  In an article published by the Patriot Ledger in September 2018, it was noted that the urgent care clinic industry was "exploding" in the area where Plaintiffs and Defendants operate, and that six "Health Care Express" locations were then "scheduled to become part of South Shore Health Care" (i.e., the Defendant Hospital Health Network). *See* Exhibit G (later noting "when South Shore Health System takes over [the] clinics later this year, it will allow them to more easily share electronic patient records with primary care doctors in the system").

24.     On their primary website, the Defendant Hospital Health Network currently advertises seven urgent care clinic locations—including the original "South Shore Medical Center Norwell" (which has existed alongside the hospital and Plaintiffs for many years)—as well as six locations with the names "South Shore Health Express – Abington," "South Shore Health Express – Kingston," "South Shore Health Express – Plymouth," "South Shore Health Express – Weymouth," "South Shore Health Express – Pembroke," and "South Shore Health Express – Quincy."  *See* Exhibit H.  On that same website, Defendants refer to those clinics as "South Shore Health's Urgent Care Centers."  *See id*.

25.     Plaintiffs have operated an "old school," classical medical practice for over twenty-five years.  As noted above, this includes answering the telephone with the words "South Shore Health Center" and/or "South Shore Health Care," and having signage, business cards, email marketing, brochures, letterhead, referral requests and invoices, among other documents, all prominently featuring the names "SOUTH SHORE HEALTH CENTER" or "SOUTH SHORE HEALTH CARE."  These types of medical practices have survived and thrived for decades via this kind of marketing, as well as by word of mouth, where a patient urges colleagues and acquaintances to seek out their doctor over at "South Shore Health Care."  While Plaintiffs may not have operated a website over the last few years, that is not a sufficient reason to allow Defendants to "virtually encircle" and encroach upon Plaintiffs' rights in the SOUTH SHORE HEALTH Marks, by adopting similar domain names and, more recently, changing its website and social media accounts to feature just the name "South Shore Health."  As set forth above, Defendants have also physically encircled and encroached upon Plaintiffs rights, by acquiring six "Health Express" clinics in the area surrounding Plaintiffs' primary business, with the intent of renaming all of those clinics "South Shore Health Express."

26.     Defendants have long known of Plaintiffs' use of the SOUTH SHORE HEALTH Marks, due in part to patient referrals between Defendants and Plaintiffs over the years.

27.     Defendants have likewise negligently, carelessly and/or intentionally appended "Health Express" to the "South Shore" element of their "SOUTH SHORE HOSPITAL" mark, to now refer to all of their urgent care clinics as "South Shore Health Express"—as if Plaintiffs have not been using the SOUTH SHORE HEALTH Marks continuously and exclusively for over a quarter of a century—to further create the impression that it is Plaintiffs who are the trademark infringers here, when the exact opposite is true.

28.     Defendants have intentionally co-opted the term "Health" as part of the larger overall mark "South Shore Health," as part of a deliberate plan to expand the footprint of South Shore Hospital—while confusing the actual and prospective patients and clientele of Plaintiffs' into obtaining health services from Defendants.

29.     Since Defendants' began their unlawful conduct, Plaintiffs have experienced a distinct decrease in business.

30.     As a result of Defendants' unlawful conduct, numerous instances of actual confusion have already occurred in the marketplace—as agents of the Defendants' Hospital Health Network have readily admitted.  For instance, one or more of the Defendants' Hospital Health Network's "South Shore Health Express" clinics have received telephone calls during the Summer of 2018 in which they were asked if they were related to South Shore Health Care in Braintree Massachusetts.  At that time, the receptionist at Defendants' Abington clinic responded that "a lot of people think that," before confirming that the Abington "South Shore Health Express" is not affiliated with Plaintiffs.  The receptionist in the Weymouth clinic made a similar statement.  The receptionist in the Quincy clinic responded: "I get that question all the time but we are not related to the Braintree office and we do not have a location in Braintree."

31.     The mere fact that Defendants' agents believe and recount that "a lot of people think" or assume there is some connection between the Defendant Hospital Health Network and Plaintiff—or that Defendants' receptionists are being asked "all the time" whether they are related to Plaintiffs' business in Braintree—clearly establishes that consumers have been, and continue to be, confused into whether the Defendants' Hospital Health Network's use of the SOUTH SHORE HEALTH Marks suggests an affiliation between Defendants and Plaintiffs—an affiliation that does not exist.

32.     Over the last several months, Dr. Baratz has personally participated in hundreds of conversations with other doctors and medical professionals, in which those doctors or medical professionals have asked him if his SOUTH SHORE HEALTH CARE business is affiliated with the Defendants' Hospital Health System.

33.     Over the last several months, Plaintiffs' employees have personally participated in numerous telephone calls and/or in-person requests, in which the individuals calling or appearing in-person at Plaintiffs' business have asked whether Plaintiffs' SOUTH SHORE HEALTH CARE business is affiliated with the Defendants' Hospital Health System.

34.     Over the last several months, Plaintiffs' employees have personally handled numerous facsimile messages, email messages and/or hard-copy mail messages that were inadvertently sent to Plaintiffs' SOUTH SHORE HEALTH CARE business, which were intended to be sent to the Defendants' Hospital Health System, or vice versa.

35.     Plaintiffs would like to advertise new health care services and/or providers that they are about to launch, but Plaintiffs reasonably fear that even placing an advertisement in the local newspaper may simply lead to more confusion. After all, there are two "South Shore Health" entities now operating in the marketplace.  Plaintiffs fear that advertising its own services may now inure to the benefit of Defendants.

36.     A search conducted on the Internet search engine Bing Maps for the term "south shore health system urgent care" (without quotes) identified its first result as "South Shore Health Care"—the business owned by Plaintiffs.  *See* Exhibit I.

37.     Throughout the years during which Plaintiffs have used the SOUTH SHORE HEALTH Marks, there have been a number of other businesses offering health and health care services that include the leading term "SOUTH SHORE."  These businesses include "South Shore

Cardiology," "South Shore Urology," "South Shore Orthopedics," and even "South Shore Medical Center," among others.  However, over the past twenty-five years, Plaintiffs have known of no other business using the exact three-word phrase "SOUTH SHORE HEALTH," apart from Plaintiffs themselves.

38.     Yet now, despite being well aware of Plaintiffs' asserted rights and this dispute (as discussed below), Defendants have only recently attempted to consummate a complete branding transformation to "South Shore Health."  Defendants' website now prominently features its brand new "SOUTH SHORE HEALTH" Logo, shown below—and have recently begun a partnership with Boston's local ABC television affiliate to provide wellness education and guidance to Boston-area residents.  *See* Exhibit J:



That article also co-opts Plaintiffs' name in order to highlight Defendants' evolution and recent expansion, from a *hospital* to a *medical system*.  *See id.* ("South Shore Health has evolved over the past 96 years, from a community hospital to a community healthcare system").

39.     Likewise, even though Defendants previously used the name "South Shore **Hospital**" on their Twitter feed, they have now even changed their name on Twitter to "South Shore **Health**"—even though their Twitter "handle" remains @southshorehosp.  *See* Exhibit K.

40.     The overall mark SOUTH SHORE HEALTH CARE is highly similar in terms of sound, overall appearance, connotation and commercial impression to the overall marks SOUTH SHORE HEALTH SYSTEM and SOUTH SHORE HEALTH EXPRESS, inasmuch as each of those three marks share the identical leading, distinctively dominant portion Plaintiffs' "SOUTH SHORE HEALTH" mark.

**PLAINTIFFS SOUGHT TO RESOLVE THE DISPUTE**

41.     On or around August 16, 2018, the undersigned counsel for Plaintiffs sent a demand letter to the two individuals identified as the Presidents of the two Defendant entities, Gene E. Green, M.D. and Luke O'Connell, M.D., regarding Plaintiffs' service mark rights in the SOUTH SHORE HEALTH Marks, and Plaintiffs' concerns regarding the likelihood of consumer confusion between Plaintiffs and Defendants—including a discussion of instances of actual confusion that had already occurred in the marketplace. *See* Exhibit J.  The letter demanded, among other things, that Defendants cease using the exact wording SOUTH SHORE HEALTH, and assign the domain name <southshorehealth.org> to Plaintiffs. *Id*.  The letter also demanded a response by August 31, 2018. *Id*.

42.     Since that date, Plaintiffs and Defendants have attempted to negotiate a resolution to this dispute, but have been unsuccessful. Defendants have continued in their refusal to acknowledge Plaintiffs' enforceable trademark rights, while also claiming to purportedly own trademark rights in the same exact phrase used by Plaintiffs for over twenty-five years, despite the fact that Defendants had never used their obscurely-registered corporate name as a trademark or service mark in commerce.  On information and belief, the Defendants' Hospital Health Network has intentionally delayed and slow-rolled the negotiations with Plaintiff in order to close on its transaction with the six Health Express clinics—to enable the Defendant Hospital Health Network to roll out new signage bearing Plaintiffs' SOUTH SHORE HEALTH Marks on its six newly-acquired SSHE facilities surrounding Plaintiffs' physical location, to create six different newly-named "South Shore Health" entities—immediately encircling Plaintiffs. *See* Exhibit H.  Indeed, while preparing to "re-brand" these six facilities to infringe Plaintiffs' SOUTH SHORE HEALTH Marks, Defendants have already altered their **website** to refer to these six facilities as Defendants'

"South Shore Health Express" clinics.  Clearly, the physical signage for these SSHE facilities is "in the works."

43.     Upon information and belief, at the time Defendants first considered adopting the "South Shore Health" mark and/or the name "South Shore Health System," Defendants had constructive knowledge of Plaintiffs' rights, by virtue of Plaintiffs' Commonwealth of Massachusetts Trademark Reg. Nos. 48038, 86079 and 86083.

44.     Upon information and belief, at the same time Defendants first considered adopting the "South Shore Health" mark and/or the name "South Shore Health System," Defendants had actual knowledge of Plaintiffs' rights, by virtue of Plaintiffs' longstanding advertising and usage of the SOUTH SHORE HEALTH Marks in Defendants' own backyard, and in interstate commerce. Indeed, Plaintiffs and Defendants have engaged in numerous mutual referrals over the years.  Defendants were aware of Plaintiffs' use of the SOUTH SHORE HEALTH Marks by virtue of Defendants' own referrals of patients to Plaintiffs for services, and/or by Defendants' own receipt of patients referred to Defendants by Plaintiffs.

**COUNT I:  SERVICE MARK INFRINGEMENT & FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

45.     Plaintiffs hereby adopt and reaver each of the allegations contained in Paragraphs 1 through 44 above, inclusive.

46.     Defendants have committed federal service mark infringement and false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

47.     By virtue of its longstanding use of the SOUTH SHORE HEALTH Marks in interstate commerce, together with substantial advertising expenditures under those marks, and significant revenue earned under those marks, the SOUTH SHORE HEALTH Marks have

acquired secondary meaning among the relevant consuming public for the different health and health-related services provided by Plaintiffs' under the SOUTH SHORE HEALTH Marks.

48.     Defendants' earliest use of the designation "South Shore Health" in commerce to refer to the Defendant Hospital Health Network occurred only recently—long after Plaintiffs' first use of the SOUTH SHORE HEALTH Marks, and long after Defendants gained both actual and constructive knowledge of Plaintiffs' use of its SOUTH SHORE HEALTH Marks.

49.     Plaintiff is the owner of all right, title, interest, and the goodwill in and to its SOUTH SHORE HEALTH Marks.  Plaintiffs' service mark rights in those marks, and more recently, in SOUTH SHORE HEALTH CARE, as Plaintiffs are now called, are valid and enforceable.  Plaintiffs' SOUTH SHORE HEALTH CARE mark has come to act and continues to act as a source indicator in the marketplace for Plaintiffs' services, insofar as Plaintiffs have developed secondary meaning and/or acquired distinctiveness in the SOUTH SHORE HEALTH Marks.  Those marks are recognized by consumers as an indicator of the high-quality health care services associated with the SOUTH SHORE HEALTH brand, and as a result of the substantial effort of Plaintiffs in marketing its various under that brand in the United States.

50.     Defendant Hospital Health Network's "South Shore Health" and/or "South Shore Health System" designation is confusingly similar in sight, sound, connotation and commercial impression to Plaintiffs' mark SOUTH SHORE HEALTH CARE (and its predecessor mark SOUTH SHORE HEALTH CENTER").

51.     Many of the services offered by the Defendant Hospital Health Network are similar and highly related to the services Plaintiffs offer and have offered under their SOUTH SHORE HEALTH Marks.  Plaintiff and Defendant both offer identical and/or overlapping health care and health management services, together with a wide variety of health-related services.

52.     Defendants' use of the marks "South Shore Health" and "South Shore Health System" is likely to result in confusion with Plaintiff's SOUTH SHORE HEALTH Marks.

53.     Defendants' use of the marks "South Shore Health" and "South Shore Health System" has already resulted in actual instances of confusion with Plaintiffs' SOUTH SHORE HEALTH Marks, which occurrences continue to increase in frequency, as Defendants' ramp up their use of the infringing marks.

54.     Defendants' use of the marks "South Shore Health" or the mark "South Shore Health System" is likely to cause confusion in the minds of the public, and is likely to deceive consumers as to the source or origin of those services, and is likely to mislead consumers, all to Plaintiffs' damage.  The public, upon seeing the "South Shore Health" and/or "South Shore Health System" marks in connection with Defendants' services, would be and already are being deceived or confused into believing that such services originate, are affiliated with, or are endorsed by Plaintiffs, contrary to fact.

55.     On information and belief, Defendants have acted and continue to act with knowledge of Plaintiffs' service mark rights, and have thus willfully infringed upon Plaintiff's rights in and to its SOUTH SHORE HEALTH Marks.

56.     By reason and as a direct result of these acts of service mark infringement and false designation of origin by Defendants, Plaintiffs have suffered great and irreparable damage, the full extent of which is currently unknown, while Defendants are positioned for unjust enrichment on account of Plaintiffs' goodwill and reputation, at Plaintiffs' substantial expense.  Plaintiffs will continue to suffer great and irreparable damage unless and until Defendants are enjoined by this Court.

## COUNT II:  CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)

57.     Plaintiffs hereby adopt and reaver each of the allegations contained in Paragraphs 1 through 56 above, inclusive.

58.     Defendants have committed cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

59.     Plaintiffs are the owner of all right, title, interest and goodwill in and to its SOUTH SHORE HEALTH Marks. The SOUTH SHORE HEALTH Marks were distinctive and/or had acquired distinctiveness at the time that Defendants registered the domain name <southshorehealth.org > (the "Defendants' Domain Name").

60.     Plaintiffs are also the owner of all right, title, interest and goodwill in and to its Massachusetts-registered SOUTH SHORE HEALTH CARE and SOUTH SHORE HEALTH CENTER service marks.  Those two service marks were distinctive and/or had acquired distinctiveness at the time that Defendant registered the Defendants' Domain Name.

61.     Defendants' Domain Name contains the wording "southshorehealth," a character string that is identical and confusingly similar to Plaintiff's state registered and federally-applied for service mark rights in the SOUTH SHORE HEALTH Marks.

62.     Defendant has a bad faith intent to profit from Plaintiffs' SOUTH SHORE HEALTH Marks, by continuing to use the Defendants' Domain Name and to divert patients and clientele who would otherwise be searching for Plaintiffs' services.

63.     Because the character string "southshorehealth" is the exact character string one would use to search for the SOUTH SHORE HEALTH Marks to find Plaintiffs' domain name, it is possible and indeed likely that one or more consumers would type <southshorehealth.org> intending to find Plaintiffs, before being directed to Defendants' website.

64.     By reason and as a direct result of these acts of cybersquatting by Defendants, Plaintiffs have suffered great and irreparable damage, the full extent of which is currently unknown, while Defendants are positioned for unjust enrichment on account of Plaintiffs' goodwill and reputation, at Plaintiffs' substantial expense.   Plaintiffs will continue to suffer great and irreparable damage unless and until Defendants are enjoined by this Court.

## COUNT III:  INFRINGEMENT OF PLAINTIFFS' EXCLUSIVE MASSACHUSETTS TRADEMARK RIGHTS MASS. LAWS ANN. CH. 110H, § 13

65.     Plaintiffs hereby adopt and reaver each of the allegations contained in Paragraphs 1 through 64 above, inclusive.

66.     Defendants have committed service mark infringement under the Massachusetts statute on Registration and Protection of Trademarks, Mass. Laws Ann. ch. 110H, § 13.

67.     Plaintiff is the owner of all right, title, interest and goodwill in and to its registered service marks SOUTH SHORE HEALTH CARE and SOUTH SHORE HEALTH CENTER, as reflected in Massachusetts Reg. Nos. 86079 and 86083 (the SOUTH SHORE HEALTH Registrations, attached as Exhibit B.)

68.     Plaintiffs' service mark rights in the registered service marks SOUTH SHORE HEALTH CARE and SOUTH SHORE HEALTH CENTER are valid and enforceable.  Plaintiffs' have used those marks for over 25 years, and the marks have generated secondary meaning in the eyes of consumers, such that the SOUTH SHORE HEALTH Marks have acquired distinctiveness so as to act as source indicators in the marketplace for Plaintiffs' services.  Further, the SOUTH SHORE HEALTH Marks are recognized by consumers as an indicator of the high-quality health care services associated with Plaintiffs, and as a result of the substantial effort of Plaintiffs in marketing its services under those marks in the United States.

69.     The Defendant Hospital Health Network's "South Shore Health" and/or "South Shore Health System" designation is confusingly similar in sight, sound, connotation and commercial impression to Plaintiffs' registered marks SOUTH SHORE HEALTH CARE and SOUTH SHORE HEALTH CENTER.

70.     Many of the services offered by the Defendant Hospital Health Network are identical, overlapping, similar and/or are highly related to the services Plaintiffs offer and have offered under their SOUTH SHORE HEALTH Marks.  Both Plaintiffs and Defendants offer health care and health management services, together with a wide variety of health-related services.

71.     Defendants' use of the marks "South Shore Health" and "South Shore Health System" is likely to result in confusion with Plaintiff's Commonwealth-registered SOUTH SHORE HEALTH CARE and/or SOUTH SHORE HEALTH CENTER marks.

72.     Defendants' use of the marks "South Shore Health" and "South Shore Health System" has already resulted in repeated, actual instances of confusion with Plaintiff's Commonwealth-registered SOUTH SHORE HEALTH CARE and/or SOUTH SHORE HEALTH CENTER marks

73.     Defendants' use of the marks "South Shore Health" or the mark "South Shore Health System" is likely to cause confusion in the minds of the public, and is likely to deceive consumers as to the source or origin of those services, and is likely to mislead consumers, all to Plaintiffs' damage.  The public, upon seeing the "South Shore Health" and/or "South Shore Health System" marks in connection with Defendants' services, would be and already are being deceived or confused into believing that such services originate, are affiliated with, or are endorsed by Plaintiffs, contrary to fact.

74.     On information and belief, Defendants have acted, and continue to act, with knowledge of Plaintiffs' service mark rights, and has thus willfully infringed upon Plaintiff's rights in and to its SOUTH SHORE HEALTH Marks.

75.     By reason and as a direct result of these acts of service mark infringement and false designation of origin by Defendants, Plaintiffs have suffered great and irreparable damage, the full extent of which is currently unknown, while Defendants are positioned for unjust enrichment on account of Plaintiffs' goodwill and reputation, at Plaintiffs' substantial expense.  Plaintiffs will continue to suffer great and irreparable damage unless and until Defendants are enjoined by this Court.

### COUNT IV:  UNFAIR COMPETITION UNDER M.G.L.A. c. 93A §§ 2, 11

76.     Plaintiffs hereby adopt and reaver each of the allegations contained in Paragraphs 1 through 75 above, inclusive.

77.     On information and belief, Defendants' intentional acts described herein have been made in defiance of Plaintiffs' lawful rights in and to the SOUTH SHORE HEALTH Marks.

78.     Defendants' unlawful conduct is knowing and willful.

79.     Defendants' acts constitute unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch 93A, §§ 2, 11.

80.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiffs.

81.     Defendants' unfair and deceptive acts and practices have injured and threaten to continue to injure Plaintiffs, including loss of patients and clientele, dilution of goodwill, confusion of existing and potential patients and clientele, and injury to their reputation.

82.     Plaintiffs have no adequate remedy at law for the wrongful actions of Defendants.

83.     Pursuant to Mass. Gen. Laws ch 93A, § 11, Plaintiffs are entitled to treble damages, along with attorney's fees and costs.

## COUNT V:  UNFAIR COMPETITION UNDER MASSACHUSETTS COMMON LAW

84.     Plaintiffs hereby adopt and reaver each of the allegations contained in Paragraphs 1 through 83 above, inclusive.

85.     On information and belief, Defendants' acts described herein have been made with the result of creating a likelihood of confusion, or of a misunderstanding as to the source, sponsorship, or approval of Defendants' services, and with the result of unjustly enriching Defendants at the expense of Plaintiffs.

86.     Defendants' acts constitute unfair competition under Massachusetts common law.

87.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiffs.

88.     Defendants' wrongful acts have injured and threaten to continue to injure Plaintiffs, including loss of patients and clientele, dilution of goodwill, confusion of existing and potential patients and clientele, and injury to their reputation.

89.     Defendants have realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled. As a result of this, Defendants have been unjustly enriched by their unlawful conduct.

90.     Plaintiffs have also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

91.     Plaintiffs have no adequate remedy at law for the wrongful actions of Defendants.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

A.      That this Court find that Plaintiffs own valid and enforceable service mark rights in its SOUTH SHORE HEALTH service mark(s), including the mark SOUTH SHORE HEALTH CARE and/or SOUTH SHORE HEALTH CENTER;

B.      That this Court find that Plaintiffs possess all right, title and interest in in its Massachusetts-registered SOUTH SHORE HEALTH CARE and SOUTH SHORE HEALTH CENTER service marks;

C.      That this Court find that Defendants have unlawfully, and without authorization, infringed upon Plaintiffs' service mark(s), and has engaged in unfair competition, both in violation of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, and in violation of the Massachusetts statute on Registration and Protection of Trademarks, Mass. Laws Ann. ch. 110H, § 13, and that Defendants have done so willfully;

D.      That this Court find that Defendants have unlawfully committed cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d);

E.      That this Court find that Defendants have unfairly competed under Massachusetts common law, and that the violations have been performed willfully;

F.      That Defendants's unfair and deceptive acts and practices violate Mass. Gen. Laws ch. 93A, §§ 2, 11;

G.      That Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert and/or participation with them who receive notice, be preliminarily and permanently enjoined and restrained from:

      i.        Infringement of Plaintiffs' service marks;

      ii.       Engaging in unfair competition;

      iii.      Cybersquatting on Defendants' Domain Name and any other domain name incorporating a "southshorehealth" or similar element;

      iv.      Using Plaintiffs' SOUTH SHORE HEALTH Mark(s) in United States and/or Massachusetts commerce; and

      v.      Erecting any infringing signage on or near Defendants' recently acquired six Health Express clinics, and/or on or near any other buildings associated with Defendants or their health services.

H.      That an accounting be held and judgment rendered for damages sustained by Plaintiffs on account of Defendants' service mark infringement and unfair competition;

I.      That an accounting be held and judgment rendered for damages sustained by Plaintiffs on account of Defendants' cybersquatting;

J.      That this Court award Plaintiffs treble damages, including attorneys' fees and costs, pursuant to Mass. Gen. Laws ch. 93A, §§ 2, 11;

K.      That this Court assess pre-judgment and post-judgment interest against Defendants for the amount awarded to Plaintiffs; and

L.      That this Court find this case exceptional under 15 U.S.C. § 1117 and award enhanced damages and reasonable attorney fees, taxable costs and such other and further relief to Plaintiff, as it deems just and lawful.

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury as to all issues triable to a jury.

Respectfully submitted,

SOUTH SHORE HEALTH CARE, INC. SOUTH
SHORE HEALTH CENTER, INC.

/s/ *Zachary C. Kleinsasser*
Zachary C. Kleinsasser, Esq. (BBO# 664291)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: 617-310-6000
Facsimile: 617-310-6001

Richard D. Harris, Esq. (*pro hac vice* forthcoming)
Barry R. Horwitz, Esq. (*pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone:  312-456-8400
Facsimile:  312-456-8435

Dated: March 1, 2019                Counsel for Plaintiffs